NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN WRONKO, COLLENE WRONKO, and JENNIFER COOMBS<br><br>      Plaintiffs,<br><br>v.<br><br>HOWELL TOWNSHIP, CHIEF OF POLICE ANDREW KUDRICK, JEFFREY MAYFIELD, CAPTAIN JOHN STORROW, and JOHN DOES 1-100,<br><br>      Defendants. | Civil Action No. 3:17-cv-1956-BRM-DEA<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Howell Township, Andrew Kudrick ("Kudrick"), Jeffrey Mayfield ("Mayfield"), and John Storrow's ("Storrow," collectively "Defendants")[1] Motion to Dismiss. (ECF No. 11.) Plaintiffs Steven Wronko, Collene Wronko, and Jennifer Coombs ("Combs," collectively "Plaintiffs") oppose the Motion. (ECF No. 12.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendants' Motion is **GRANTED**.

**I. BACKGROUND**

For the purposes of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.*

---

[1] At all times relevant, Kudrick was the Chief of Police for Howell Township, Mayfield was a former Howell Police Officer, and Storrow was the Captain of the Howell Police Department. (Am. Compl. (ECF No. 4) ¶¶ 15-18.)

*Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

This dispute arises out of Defendants' alleged retaliation against Plaintiffs for making anonymous New Jersey Open Public Records Act ("OPRA") requests. Steven Wronko made anonymous requests to Howell Township for governmental records pursuant to OPRA. (ECF No. 4 ¶¶ 19, 21.) In December 2016, Mayfield, Kudrick, and/or Storrow

> accessed the information Steven Wronko typed anonymously into the [Howell Township website] and identified that [] Steven Wronko had made a lawful [OPRA] request for records related to [] Howell Township's school buses and whether there were any records of these school buses being used while bus drivers were committing traffic offenses.

(*Id.* ¶ 30.)

Thereafter, on December 12, 2016, Kudrick issued an internal memorandum titled "Videoing/Encounters with the Police" ("Kudrick Memo") to Howell Police personnel. (*Id.* ¶ 31.) The Kudrick Memo states, in relevant part:

> We see it too often – video of a police officer being baited into a confrontation with a motorist or pedestrian. The outcome is usually not good for the officer an agency. A YouTube and Facebook video involving our officers recently appeared online. As expected, the Howell officers acted professionally. They handled the situation exceptionally, turning the encounter around making the subject look foolish.
>
> The purpose of this memorandum is to familiarize and guide your response when you do encounter such persons – as many of us have.
>
> . . . .
>
> Although each situation presents itself in a different manner with its own set of unique circumstances, once there is defiance/refusal to provide required credentials, you control the situation through your tactics, training and discretion. Since most of the non-compliant

2

> persons are not familiar with the actual laws, advise them failure to provide their credentials is a criminal offense and they will be arrested if they do not immediately provide them to you (N.J.S.A. 2C:29-1 – Obstruction). . . .
>
> Do not consider the memorandum as a standard operating procedure or a policy. I offer you guidance during this era of policing. Know the laws. Educate yourselves. Pay attention and learn from the mistakes and successes of others. Don't get lured into a controversial encounter. Make this an opportunity for you to showcase your professionalism and knowledge. Integrity can be defined as doing the right thing even when no one is around. The same should apply to your encounters with the public. Always act as if you are being recorded and it will appear on social media. You will always win. You are professionals within a highly-respected law enforcement agency. I am confident you will act consistent with the expectations of a Howell police officer. You, in turn, will always have my full support.

(Kudrick Memo (ECF No. 4-3).)

On December 19, 2016, the Avon by the Sea Police Department emailed all local police departments regarding an OPRA request they received, asking if anyone received a similar OPRA request. (ECF No. 4-4.) Kudrick responded, stating, "Yes, I received same. No such records existed. It was explained we cannot run summonses by bus number or company name. His name is Steve Wronko. Former Howell resident. Now I believe to be living in Keansburg." (*Id.*) The Holmdel Police Department also responded, stating:

> Holmdel received a similar request a few weeks ago from No One: aka Wronko. However, there were no plate numbers, and instead we were asked to provide all government emails and PERSONAL emails AND TEXTS from the Police Chief and the Mayor that had four specific words in the subject line or body.

(ECF No. 4-5.) On December 20, 2016, Kudrick sent another email to the Monmouth County Police Chiefs attaching the Kudrick Memo and stating:

> In response to the ongoing harassment of public employees by Steven Wronko and Jennifer Coombs, I prepared a memo for my staff an officers. I sent it to all of you in a PDF. If you would like to

> document in Word so you can cut/paste/add and place on your own
> PD letterhead email me and I'll send it out to you. Feel free to use.

(ECF No. 4 ¶ 42.)

Subsequently, Storrow allegedly "illegally accessed the New Jersey Motor Vehicle Online Access to Motor Vehicle Records database and retrieved information related to [] Steven Wronko, Collene Wronko and Jennifer Coombs." (*Id.* ¶ 45.) Storrow was required to sign a certification before he obtained access to the Motor Vehicle Online Database stating, in part, "I will only use any personal information contained in records I have requested as permitted by the Drivers' Privacy Protection Act." (*Id.* ¶ 29.) On February 23, 2017, Storrow sent a copy of the driver's license information he obtained via email to Mayfield. (*Id.* ¶ 46.) Thereafter, Mayfield, Kudrick, and Storrow constructed three posters consisting of the pictures and data obtained from the New Jersey Motor Vehicle Commission's Online Access database regarding the Plaintiffs. (*Id.* ¶ 51.) Collene Wronko and Steven Wronko's posters also stated, "Subject may attempt to audio and video tape government employees and government buildings." (ECF No. 4-6.) Coombs poster stated, "Known to operate a 2005 silver Hyundai Sonata . . ." (*Id.*) The posters were placed behind the municipal clerk's counter at the Howell Municipal Building "so that the public was able to view the Plaintiffs' pictures and Plaintiffs' personal information." (ECF No. 1 ¶ 52.)

On March 24, 2017, Plaintiffs filed a Complaint against Defendants. (ECF No. 1.) On April 11, 2017, Plaintiffs filed an Amended Complaint, alleging six counts: (1) violation of 42 U.S.C. § 1983; (2) violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1, *et seq.*; (3) *Monell* claims; (4) failure to train, supervise, or discipline pursuant to the NJCRA; (5) declaratory judgment; and (6) a private cause of action pursuant to 18 U.S.C. § 2724. (ECF No. 4.) In lieu of filing an answer, Defendants filed a Motion to Dismiss. (ECF No. 11.) Plaintiffs oppose the Motion. (ECF No. 12.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original).

## III. DECISION

### A. § 1983 (Count One) and DPPA (Count Six) Claims

Defendants argue Plaintiffs cannot maintain a § 1983 claim because their Amended Complaint lacks facts stating Defendants deprived Plaintiffs of any federal rights. (ECF No. 11-2 at 5-7.) First, Defendants argue, "While the Complaint vaguely referenced a 'right to privacy,' no court has found that an individual has a legitimate expectation of privacy in a driver's license photograph so as to trigger constitutional privacy protections." (*Id.* at 6.) Second, they contend Plaintiffs' Complaint does not allege any other federal rights of which Plaintiffs have been deprived. (*Id.*) Lastly, they contend Plaintiffs' allegations of violations of the Driver's Privacy Protection Act ("DPPA") are not actionable under § 1983. (*Id.* at 6-7.) Plaintiffs contend their

Complaint properly claims relief under § 1983. (ECF No. 12-2 at 18.) They further argue Plaintiffs who seek remedies under the DPPA may also seek relief under § 1983. (*Id.* at 20.)

Section 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"To establish valid claims under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." *Shuman ex rel Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995) (citing *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir. 1993))); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").

Count One of Plaintiffs' Amended Complaint merely alleges Defendants "violated the Plaintiffs . . . protections set forth under 42 U.S.C. § 1983." (ECF No. 4 ¶ 58.) However, the Court construes the factual allegations of the Amended Complaint to allege two § 1983 violations: (1) violation of § 1983 by reason of the alleged DPPA violations (*see generally* ECF No. 4); and (2)

7

violations of Plaintiffs' "right to privacy" (*Id.* ¶ 55). The Court will address each alleged violation in turn.

Appellate courts are split on the issue of whether statutory rights created by the DPPA are enforceable both directly and under § 1983. *See Collier v. Dickinson*, 477 F.3d 1306, 1311 (11th Cir. 2007) (the statutory rights created by the DPPA are enforceable both directly and under § 1983; *see also Roth v. Guzman*, 60 F.3d 603 (6th Cir. 2011); *but see McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) (under the DPPA there is no private right of action pursuant to 42 U.S.C. § 1983). The Third Circuit has not addressed the issue, but has stated, "like § 1983, the DPPA sounds in tort." *Pichler v. UNITE*, 542 F.3d 380, 388 (3d Cir. 2008). This Court need not reach this issue because Plaintiffs are unable to state a claim for the underlying violation of the DPPA.

The DPPA provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). Permissible uses include, in part, "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C.A. § 2721. The broad language of the government use exception of § 2721(b)(1) reflects Congress's intent to allow governmental agencies to access and use motor vehicle record data in conducting their operations. *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1133 (D. Minn. 2013).

> The provision uses broad language in allowing for use of the data by a government agency "in carrying out its functions." Unlike the other provisions that define an exemption by reference to the user of the data as well as the use, the exception for government use under (b)(1) does not include more specific qualifications or limitations. *Cf.* 18 U.S.C. § 2721(b)(3) (restricting "use in the normal course of

> business by a legitimate business" to particular uses); § 2721(b)(6) (limiting insurance-related parties to uses "in connection with claims investigation activities, antifraud activities, rating or underwriting"); § 2721(b)(8) (limiting use by licensed private investigative agencies or security services for "any purpose permitted" under the section). Also, unlike the exemption of § 2721(b)(4) for data uses in connection with court and agency proceedings, the government functions exemption does not include specific examples suggestive of limited categories of activities covered by the provision.

*Id.*

Here, the record clearly demonstrates the posters were prepared and placed behind a counter in the municipal building in response to Plaintiffs' known behaviors and was solely for the legitimate purpose of informing the Howell Township Police Department of Plaintiffs' activities (their audio and video taping of government employees and buildings) so Howell Township could continue to effectively perform its essential governmental functions. The posters themselves warn the Howell Police Department that the "[s]ubject may attempt to audio and video tape government employees and government buildings." (ECF No. 4-6.) Further, the Kudrick Memo titled "Videoing/Encounters with the Public" is a prime example of the posters' purpose—"to familiarize and guide" an officer's "response" when he/she encounters "such persons" who bait police officers into confrontation and record them. (ECF No. 4-3.) Because this Court concludes Defendants' use of Plaintiffs' motor vehicle records was a "permissible use" under the DPPA, Plaintiffs are unable to state a claim under the DPPA. It follows Plaintiffs also fail to state a violation of § 1983 based on alleged DPPA violations.

To the extent Plaintiffs claim the disclosure of their name, age, and address on the posters violate a general right to privacy, their claims are flawed. As an initial matter, there is no general constitutional right to privacy. *Katz v. United States*, 389 U.S. 347, 350 (1967); *see Whalen v. Roe*, 429 U.S. 589, 608, (1977) (Stewart, J., concurring). "An officer's search of public records does

not violate the constitutional right to privacy." *Walker v. Cullen*, 491 F. App'x 273, 275 (3d Cir. 2012) (citing *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95, (1975) ("[T]he interests in privacy fade when the information involved already appears on the public record.")); *see Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991). While the DPPA "provides redress for violation of a person's protected interest in the privacy of his or her motor vehicle records and the identifying information therein," it also "expressly provides that information contained in a person's record may be disclosed '[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions.'" *Walker*, 491 F. App'x at 275 (quoting 18 U.S.C. § 2721(b)(1)). Because the Court has concluded Defendants' use of Plaintiffs' motor vehicle records does not violate the DPPA or Plaintiffs' right to privacy, Defendants' use of the motor vehicle database did not violate Plaintiffs' right to privacy. *See id.*

As a result, the Court finds Plaintiffs have not pled any facts demonstrating Defendants deprived them of a right secured by the Constitution or any law of the United States which is required to state a cause of action under § 1983. *Shuman ex rel Shertzer*, 422 F.3d at 146. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Counts One (violation of § 1983) and Six (violation of DPPA) is **GRANTED**.

### B. NJCRA (Count Two)

Defendants argue Plaintiffs cannot state a claim under the NJCRA for the same reasons they cannot state a claim under § 1983. (ECF No. 11-2 at 7.) Plaintiffs argue the Amended Complaint properly claims relief pursuant to the NJCRA because Defendants violated OPRA and the DPPA. (ECF No. 12-2 at 30-33.)

The NJCRA provides, in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the

> Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. § 10:6–2(c). The NJCRA was modeled after § 1983, and "courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of § 1983[,]'" thereby construing the NJCRA in terms similar to its federal counterpart. *Samoles v. Lacey Twp.*, No. 12–3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (citation omitted); *see Hartfelder v. N.J. State Police*, No. 165461, 2017 WL 3184173, at *5 (D.N.J. July 26, 2017); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010). This Court has repeatedly interpreted the NJCRA analogously to § 1983. *See Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *Armstrong*, 2010 WL 2483911 at *5 ("[T]he [NJRCA] is a kind of analog to section 1983."). The NJCRA is therefore generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses and immunities as those brought under § 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). "Therefore, the Court will analyze Plaintiffs' NJCRA claims through the same lens of § 1983." *Id.* at 444.

For the reasons set forth in connection with the § 1983 analysis above, Plaintiffs cannot state a claim under the NJCRA for violations of the DPPA. Furthermore, Plaintiffs' mere allegations that Defendants violated OPRA by retaliating against Plaintiffs for making requests pursuant to the Act, is insufficient to state a claim under the NJCRA. Plaintiffs have not set forth which alleged provision within OPRA was violated or what "Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws [of

New Jersey]" were violated. N.J.S.A. § 10:6–2(c). Moreover, it would be illogical for the Court to find Defendants used the posters for retaliation after finding the posters served a legitimate purpose and assisted Howell Township in effectively performing its essential government functions. Accordingly, Defendants' Motion to Dismiss Count Two (NJCRA) is **GRANTED**.

### C. *Monell* Claim (Counts Three and Four)

Defendants contend Plaintiffs cannot state a *Monell* or failure to train/supervise claim because there was no underlying constitutional violation. (ECF No. 11-2 at 8-9.) Plaintiffs argue they have adequately pled a *Monell* claim pursuant to § 1983 because "Howell Township acting through its decision makers, [] Mayfield and [] Kudrick had a policy which permitted the police to access the New Jersey Motor Vehicle Database and use it for purposes not permitted under the DPPA." (ECF No. 12-2 at 34.)

"The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under section 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694.

"Policy is made when a decision [] maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (quoting *Andrews v.*

*City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation omitted)). "A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480 (citation omitted)). Custom can also be established through evidence of "knowledge and acquiescence." *Id.*

"A municipality may be liable under section 1983 only if it can be shown that its employees violated a plaintiff's civil rights as a result of a municipal policy or practice.'" *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989). A municipality

> cannot be vicariously liable under *Monell* unless one of [its] employees is primarily liable under section 1983 itself. "If a person has suffered no constitutional injury at the hands of [any] individual police officer, the fact that the departmental regulations might have authorized [unconstitutional action] is quite beside the point."

*Id.* (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

The NJCRA, like § 1983, does not impose vicarious or *respondeat superior* liability. *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *8 (D.N.J. July 15, 2015) ("[B]ecause *respondeat superior* liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that *respondeat superior* liability is not permitted for claims under the New Jersey Constitution and the NJCRA.") (quoting *Ingram v. Twp. Of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012)); *Estate of Dasaro v. Cty. of Monmouth*, No. 14-7773, 2015 WL 5771606, at *5 n.3 (D.N.J. Sept. 30, 2015)(same); *see Hudgon v. LaFleur*, No. 07-3626, 2010 WL 2950004, at *7 n.6 (D.N.J. July 22, 2010) ("[T]he Court sees no reason not to interpret the NJCRA consistent with *Monell* as precluding municipal liability absent an official pattern or practice.").

Because the Court has determined Plaintiffs have no viable claim against an individual, they cannot have a vicarious liability or failure to train/supervise claim against Howell Township. Accordingly, Defendants' Motion to Dismiss Count Four (Failure to Train Supervise or Discipline pursuant to the New Jersey Civil Rights Act) is **GRANTED**.

### D. Declaratory Judgment (Count Five)

Count Five of Plaintiffs' Amended Complaint requests declaratory relief. (ECF No. 4 ¶¶ 67-68.) Specifically, it states:

> Defendants . . . actions set forth above and in particular the misuse of New Jersey Motor Vehicle Online Access to Motor Vehicle Records database violated the provisions of:
> a. Federal statute, 18 U.S. Code § 2721 (Prohibition on release and use of certain personal information form State motor vehicle records);
> b. N.J.S.A. 39:2-3.4(c) ("Drivers Privacy Protection Act");
> c. United States Constitution, right to Privacy;
> d. Federal statute, [42 U.S.C. § 1983];
> e. New Jersey Civil Rights Act, N.J.S.A. 10:6-1, *et seq.*

(*Id.* ¶ 68.)

The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The express language of the declaratory judgment statute and fundamental principles of standing under Article III of the Constitution limit this power to actions which present a "case or controversy." *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). The "actual controversy" requirement refers to the case or controversy requirement of Article III. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1336 (3d Cir. 2007). In *Teva Pharmaceuticals*, the Third Circuit stated that standing in the declaratory judgment context requires:

> that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Id.* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118). The court noted, "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted).

"The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar*, 590 F.2d at 527. Moreover, "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Lattaker v. Rendell,* 269 F. App'x 230, 233 (3d Cir. 2008) (internal quotations omitted).

Because the Court finds Plaintiffs' Amended Complaint fails to sufficiently plead any cause of action or controversy, much less allege that any of the named Plaintiffs have "a substantial likelihood that [they] will suffer injury in the future," *Id.* at 233, Plaintiffs' declaratory judgment claim (Count Five) is dismissed.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and the case is **CLOSED**. An appropriate Order will follow.

Date: January 23, 2018          */s/ Brian R. Martinotti*
        **HON. BRIAN R. MARTINOTTI**
        **UNITED STATES DISTRICT JUDGE**